Appellant's counsel, please Good morning. May it please the Court, Jeffrey Noble, Superintendent of the Massachusetts State Police in his official capacity. With the Court's permission, I'd like to reserve three minutes for rebuttal. Yes, you may. Plaintiffs in this case are seeking to backdoor the federal court's enforcement of state law. The Massachusetts Wiretap Statute, the Massachusetts Public Records Law, and discovery requests under the Rules of Criminal Procedure, all under the guise of a Section 1983 claim. But the Eleventh Amendment prohibits federal courts from enjoining violations of state law. Now, what they've argued is, and what the district court said is, no, no, no, this is ex parte young. We're seeking prospective injunctive relief under federal law, i.e., under Section violations of the Sixth and Fourteenth Amendments. But when you look closely at the complaint, you see that that's just not the case. Everything that they talk about in the 184-paragraph complaint is all about the Massachusetts State Police surreptitiously recording the public and housing those recordings. In fact, right in their brief, at page 13 in the summary of argument, they talk about the Massachusetts State Police's egregious and ongoing abuses of discovery orders and the Massachusetts Wiretap Statute. They simply fail to identify any ongoing... So Judge Guzman sees in the discovery order point... I'm sorry? Judge Guzman sees in the discovery order issue, I think the issue he seizes upon for the ruling, which is a Fifth Amendment and a Sixth Amendment violation, a constitutional violation of the obligation to provide criminal discovery. And that's what I understand, at least not saying it's right, but that is the basis of her decision, which removes it from what you're arguing, which is these are just state law issues. And that may be, Your Honor, although the Fifth Amendment claim was voluntarily withdrawn by the plaintiffs in this case because it simply could not be pledged, that may be. But we're here on a Rule 12, and we have to go by the four corners of the complaint. And what we're arguing and what we say is plainly evident when you look at the complaint is  So I just want to focus. That's at least one of the errors you're asserting, is Judge Guzman ended up saying a bunch of things that are not in the complaint. And so it's 812B6, she just went outside the complaint and made up, I mean, made up, said stuff that wasn't in there. One hundred percent, Your Honor. One hundred percent. Because when you look at the complaint, you can see plainly that the plaintiffs failed to identify any ongoing violations of federal law. It's all past tense. Why? Because it needs to be. It has to be. It's undisputed that all of the plaintiffs' cases were disposed of in this case, that they were dismissed. So there's no prospective injunctive relief to be had, which is what we argued at the district court level. There's no ongoing violation of federal law for the court to enjoin. And as a result, we're asking this court to reverse the ruling on 11th Amendment immunity grounds of the lower court's decision. Counsel, this may be more of a question for your opponent, but I'd like to at least get my concern out about this. Were any of the plaintiffs here convicted of charges resulting from the investigations where these violations allegedly occurred? All of the four named plaintiffs' cases were dismissed prior to trial. So they have been. I think there are some references to pleas and convictions, but those were all unrelated charges. Is that correct? I believe that's right. So if I might just. So I gather your position would be on whether or not the plaintiffs can maintain the merits, if you will, on 12B6 grounds to the extent that they're trying to make a Brady argument as the federal constitutional violation that's at issue here. They can't show the prejudice that is required under Brady. So on that basis alone, you should win, right? That's right. And in terms of whether they sufficiently alleged a Brady violation, it fails on a number of grounds, which I'm happy to get into. I guess I would just not necessarily push back on that because I don't think it may not be in the complaint. I guess what Judge Guzman, so it's framed in the briefs as Brady, but when I read her opinion, I think she's trying to extend the constitution in a way that perhaps hasn't been done before by saying there's a right to under the constitution compulsory process clause or something for evidence that might be useful to the defense in investigating a case. Now I'm not aware of that as yet as a constitutional principle, but this is how we develop constitutional principles. So I guess while the brief pigeonholes it into Brady, her opinion doesn't do that. I think that's right. And to be frank, it wasn't entirely clear to me what Judge Guzman was attempting to do. And I do believe that that stretches beyond the bounds of the constitution, but it is clear. But that would be a merits, just so, just because this becomes a federal court kind of case, right? So that's a merits problem. She is taking a broader view of the constitution maybe than presently exists. And if that had been pled, that wouldn't be a basis for, would that be a basis, I guess, for denying, for granting this sort of interlocutory appeal and 11th amendment immunity. If this really were a prospectively injunctively pled and she has a sort of novel constitutional view, would that be something we would deal with here now? Perhaps under pen and appellate jurisdiction, because this court is analyzing Brady violations in the context of standing, whether they were Brady violations, whether they were sixth amendment and 14th amendment violations, that this court could look at that. We do argue that pen and appellate jurisdiction does apply here and the court can look at the issues of the merits of the claim because they are inextricably intertwined and necessary for a meaningful review of the appeal. So perhaps in that context, yes. I want to shift from the 11th amendment immunity argument, if I could, to our standing argument, because in addition to the claims being subject to dismissal pursuant to 11th amendment immunity, the claims are also subject to dismissal because the plaintiffs do not have standing, because they do not have a redressable injury. In fact, again, all of the cases against the plaintiffs were dismissed. So their best point on that, I think, is that they were dismissed without prejudice. They could be rebrought. So what's your response to that? Yeah. And, you know, it strains, you know, credulity to think about how there could possibly be, given the facts that we know and the facts of the case, how there could possibly be, even if it were true, that those cases were dismissed without prejudice. But do you think even as a legal matter, do you think as a legal matter, dismissal without prejudice would be the kind of threat that removes this case from lions and... Not given the facts, Judge, because what we do know from the record, and in particular from plaintiff's complaint, because it's attached as an exhibit to their complaint, which is the Mass State Police memo, which contains the footer that says, DA Discovery Packet 5, October 26, 2023, the prosecutors are aware of the recordings in each of these instances, whether they were dismissed with prejudice or without prejudice. So Mass State Police has met its Brady obligations, and we would argue not only is there awareness, but there was disclosure to the prosecuting agencies of that information, as is evidenced by that footer in that memo that's attached to plaintiff's complaint. What we also know is that the accused at this point and their counsel all know about the existence of these recordings. They know about the audit that was conducted. They know that the information was turned over, ultimately, to the prosecuting agencies. Obviously, their cases were dismissed, so it's hard to imagine where the harm could come from, where the constitutional violation could be, where the harm could come from. When the cases were dismissed without prejudice, did the Commonwealth request that it be without prejudice? I do not know. I do not know. I do know in one instance, because it's attached, it's a footnote to Plaintiff's Brief, in the Court Monch case, that case actually went, you know, there was a, we'll call it a trial. There was no trial conducted. Ultimately, the witnesses didn't show for that hearing and for that trial, and the court dismissed that case without prejudice. So it appears, at least in one instance, that that was an order that was issued by the court. Well, Counsel, maybe, again, this may be a question that your opponent will want to address, but in terms of standing and the, one of the requirements of standing, alleging injury in fact, that injury would seem to depend upon the involvement of the plaintiffs in a lot of law, which says you cannot base an injury in fact claim on the possibility that you're going to engage in future criminal conduct. I mean, I don't, again, that would seem, from your point of view, to be another dispositive argument. And it is. You are making that. And we do argue it in the brief, Judge. In addition to there being no redressable actual injury, there's also no imminent threat of suffering an actual injury. And to your point, I believe, you know, what Judge Guzman, respectfully, and what the plaintiffs would have this court do is to push against the extreme body of case law that says, you know, it simply cannot be, to have an imminent threat of injury or harm, it simply cannot be, you know, too hypothetical or too conjectural. And that's exactly what the plaintiffs are asking this court to do in this case, is to get to that level of conjecture and say, okay, well. Even if there might be an argument for moderating that requirement, what's too speculative, what's too conjectural, I think there's a pretty good policy argument that you don't want to premise future injury on the likelihood that people are going to reengage in criminal conduct. That's right. And, you know, the Lyons case that we cite, the Bromby-Brogan case, the O'Shea case that we cite for the proposition that courts will assume that plaintiffs will conform their conduct to the law to avoid prosecution. I mean, you really have to go out there and say that these plaintiffs would somehow commit the same offenses, that they'd be recorded again in the same instance, that they'd be arrested and charged again in the same instance, and that there'd be this failure, which is highly unlikely and improbable for the reasons I mentioned earlier, a failure to turn over the recording to the prosecuting agencies, i.e. the Brady violation. And the case law that we cite simply says that that is far too hypothetical and conjectural and speculative. Thank you, counsel. Thank you. Good morning, Your Honors. May it please the Court? My name is Eric Barton Hagan here on behalf of the plaintiffs in this case. Plaintiffs have alleged the injunctive relief they seek under Section 1983 against the MSP's claim of sovereign immunity, and they have standing to sue. There is a lot of arguments and positions here that were not presented below, and positions being taken that delve into the merits of the underlying constitutional claims to assess certain aspects of this case. Well, where's the prospective part of your complaint? I read it again yesterday. I don't see anything prospective other than a catch like, we will suffer future injury, which just seems to be an assertion. But the facts, there's nothing in there. I think it's important to understand that it's not just the complaint. It's also Judge that was judicially noticed by Judge Guzman and relied upon by her in her opinion. Those facts that contained in that order, which in that order, put that in context, came out several months after the complaint was filed. And it was the culmination of a hearing that he was undertaking into this use of Calio and the fact that these disclosures were not made in hundreds of cases. And at the end of that decision, he came out with an opinion that discussed how the MSP had violated numerous constitutional provisions, had undertaken egregious conduct, were not even at that point, which was a year and three months after this conduct was discovered, first discovered in 2023, was still not taking responsibility for it, was still not implementing changes, and an audit that they were being required to undertake was not undertaken. And so what you have here is a pattern of a process that the MSP had been undertaking for years, was continued even after it was discovered. And so there are facts and inferences that can be made from those facts, reasonable inferences, to which the plaintiffs are entitled on appeal and below. Is that how it works? I mean, I understand like you can maybe look at the public record of the fact that these prosecutions were dismissed, like that kind of record, but you're basically saying without amending our complaint, we just look out at some kind of order that the judge wrote and we just take what he said and we import it now into our argument? Is that how it's supposed to work? No. There are allegations in the complaint of future ongoing harm. What are those? Tell me specifically, because all I saw was the, what was it, 184? 184 and paragraphs 4 and 58, there are allegations concerning the number of potential class actions is unknown, with the implication being that there's more to be revealed because the true depth and scope of this has yet to be discovered. There's a prayer for relief that a receiver oversee the Mass State Police. That implies future ongoing harm that needs to be addressed by a receiver. Again, some of the documents, a document numbered 57.1, 57.2, and 57.3 below, that's LeConte's order and a couple of other orders in related cases, show a pattern of obfuscation, a pattern of denial of responsibility. The Cordon Manche dismissal that was discussed by my brother, that was the result because the MSP witnesses never showed up to address the issue of, well, where's your Calio video and why is it not here? And they knew that that was going to happen. They were not responding to subpoenas to get into all of this issue. And so I think, again, is this complaint robustly pled about future damage? I'm sure there are other complaints that have additional allegations to that effect. Is this enough to allow these plaintiffs to proceed to discovery and to get beyond a motion to dismiss? I believe there it is. If you take the complaint and the documents that Judge Guzman judicially noticed, which again, LeConte's decision did not come out until after the motion to dismiss was filed, which is why we had it judicially noticed, because it's extremely relevant and it shows this pattern of conduct of ongoing harm. And I think there is a distinction between this and Lyons when you get back to the standing argument. It's important to note that Lyons, it's much less, it's more discreet, more definitive in time and in scope. Here you have a pattern and practice that's been implemented. It's a policy for years and years, whereas I think Lyons made it clear to note that there wasn't a policy that that was being, and there wasn't. But we have to focus on the defendants. Do you agree that for a class action, one of the named defendants has to have standing? One of the named plaintiffs has to have standing. These people are not presently charged, right? Well, that is not in this record. They're not charged. We know their cases are dismissed without prejudice, right? That's not in this record. Well, we can look at some documents from the court, but not others? This is an argument that wasn't raised until after the motion to dismiss had already been decided. In fact, the state law claim argument that we're trying to enforce state law through 1983, that wasn't raised until the initial brief. There's a lot of preservation and waiver arguments here that... Well, if they are charged and you have some constitutional complaint about their case, that's younger. So what, what, tell me what injury these people are suffering going forward. I think, so if we're going to put aside these, the actual criminal prosecutions using Calio, what we have here is a, is a, this practice by the MSP involved entrapment. Judge Licata specifically determined that there was an entrapment aspect to this, where you're creating crimes and, and by entrapping, basically they would pull up to somebody on the side of the street, ask them to give them money, ask them to buy drugs and then arrest them. So to that extent, like it's, I think an argument can be made that there's no, there's less control over whether any particular person, including these same four plaintiffs, could be ensnared by the same entrapment in the future. Like I don't understand that. So Lyons was, I was put into a chokehold at some time in the future, at the past, and I could come up to a traffic light or commit another kind of traffic infraction or whatever, and they could do the same thing to me, and that would be unconstitutional. And the answer was, well, we don't know that that's going to happen or not happen. So, right. It's a spectrum. It's a scale. For example, like there's a case that recently came out of the Tenth Circuit involving traffic stops in Kansas, where it overcame the Lyons hurdle, even though those particular plaintiffs hadn't, those cases had been disposed of. What makes it overcome the hurdle? Because the likelihood of recurrence, the fact that, the argument being like, well, if you don't commit any more crimes, you're not going to be ensnared by this. That's not, that wasn't true in the Tenth Circuit case. It's not true here because there's entrapment arguments here. There's, there's, they're creating the crimes. They're not investigating the actual criminal activity from the start using Calio. They're using it to manufacture and entrap. Calio doesn't, I mean, no, their conduct is entrapping. They're then documenting the entrapment. But we're all subject to entrapment. I mean, that's a bad thing the police can do, and you can raise it as a defense, but that doesn't, that would be a very weird injunction. Don't engage in entrapment going forward? Don't engage, look, they can use Calio. The injunctive relief that the plaintiffs would be asking for is not, you can't use Calio. It's that once you use Calio, you have to document every instance you do and make sure that it gets produced to the future defendants. What the harm argument is, will these four plaintiffs, is it likely, or do we overcome the hurdle to say that these four plaintiffs might be ensnared in the future, even if, for like a future act? And the fact that you can be ensnared by this process without trying to engage in criminal conduct. So every person who, if police are engaging in some kind of practice, we all have the ability to prospectively challenge it because we might find ourselves in contact with the police when they can use this thing against us? I think there's a gradient. And again, in the 10th Circuit case, they were saying it's not within your control when you might get pulled over. And they've, Lyons is- It wasn't in Mr. Lyons' control when he got pulled over either. Well, I think he got pulled over because he committed a crime. I think what the distinction here is, is that- I think he got pulled over without committing a crime. That's the point. We don't know what's going to happen to Mr. Lyons in the future. And so because we don't know, it's too speculative to give him this injunction. I would refer the court to the Shaw case. It's Smith v. Shaw. It's a 10th Circuit case involving Kansas cops, where there's the similar arguments to what your arguments you're making, Your Honor. But there was a sufficient causation of potential future harm to those who weren't necessarily going to commit future crimes, but who would be ensnared by this- Let me ask you this way. What distinguishes one of your plaintiffs from any other person in the world? I think the argument is that the way that this policy has been utilized by the MSP would potentially ensnare almost anybody. If you're worried about ensnaring anybody, you also need to be worried about ensnaring these particular plaintiffs, because it could ensnare anybody. That's the distinction here. It's not a focused, targeted thing, like one or two police officers doing something that they shouldn't have with respect to one plaintiff. We've got a practice and a policy that expands throughout the whole MSP, throughout multiple counties and hundreds of cases. That seems to turn the whole standing requirement on its head. Did I understand you to say that we should not be dealing with this particular standing argument at all because it was not raised below? I ask that because standing is a jurisdictional issue. We have an obligation to assess those jurisdictional... Even if they're raising it for the first time on appeal, we have an obligation to address it. We can't just say, well, it wasn't raised. We're going to ignore it. We can't do that. No. With respect to the standing argument, that is something that you don't have to raise below and can be addressed by an appellate court in the first instance. There are a number of other arguments and positions that are made with respect to Ex Parte Young. With respect to the fact, their argument that the plaintiffs are trying to enforce state law through a federal court action, that wasn't raised at all below. It was raised for the first time on appeal. I think in this interlocutory appeal that we are here in, I think the underlying merits of the Ex Parte Young claim, for example, will we be successful in showing that these certain constitutional provisions were violated? I don't think we are there yet. That's a summary judgment. What is the constitutional argument that is made in this case? The allegations in the complaint mention the 6th and 14th Amendment. What is the state police doing that violates the Constitution? The allegation in the complaints is that by recording surreptitiously 181 plaintiffs that we know of, potential plaintiffs that we know of at this point, and then not disclosing that information in the subsequent criminal prosecutions, it denied those plaintiffs the right to compulsory process, to confrontation, to due process. Whether that is exculpatory, inculpatory, there's just some impeachment, it doesn't matter. If it's inculpatory, what under the Constitution makes you have to turn that over? The Constitution requires, the procedural due process requires that information to be turned over. So you think the Constitution requires essentially open-file discovery? No, it does not. But it does require, Judge Locanto in his decision, again, which is incorporated into this complaint and should be viewed here on appeal, talks about how there's identification issues, there's entrapment issues, and these all implicate procedural due process harm, involuntary guilty plea harm. I mean, sometimes they will, sometimes they won't. It is not calio equals entrapment. Sometimes calio will just be evidence you're guilty. And the government, I mean, I'm just not aware of the Constitutional provision that says all evidence in the government's possession must be turned over. Now, there very well may be, I know in federal Rule 16, you would have to turn over all material evidence, which has a much broader definition. But the constitutional discovery requirement is actually relatively narrow. And that's why, I mean, on the merits, and I understand you say we shouldn't read the merits, but Judge Guzman's view is a quite broad and, to me, unprecedented understanding of federal constitutional discovery rules. And be that as it may, I think our position is that it's premature to involve that issue on an interlocutory appeal, delving with whether there is sovereign immunity under the 11th Amendment or not. The Cotto decision decided last year by this court said that you're not supposed to delve into the merits. You're just supposed to assume that you have those constitutional violations that you've pled. Counsel, let me ask. So, just my understanding, to style a Brady claim, you have to allege that you have been prejudiced in the conviction that ensued. I think you're saying that it's, this is not just about Brady. It's about other constitutional provisions that don't have that same conviction prejudice requirement. Is that your position, that it's advantageous for the government to shoehorn this into, this is all about Brady, but you're saying that your allegations are broader than that, and because they're broader, it doesn't matter that these plaintiffs were never convicted as a result of any of the conduct that's alleged here. Is that what you're saying? Several responses. There's nothing in the record about these four plaintiffs, particularly. So, that is not in before this court. We don't, there's no information one way or the other about those four plaintiffs as of now. What about the allegations in the complaint? I mean, you have to have allegations that would support the merits of your claim. How do you characterize these four plaintiffs in terms of, we suffered from these constitutional violations because we were convicted? You don't say anything about that? The complaint does have all kinds of allegations about, they don't go into the specifics of the specific constitutional harm. We've mentioned the 6th and 14th Amendment. We mentioned how the fact that these Calio recordings were not disclosed during the subsequent criminal proceedings, and that that violates the 6th and 14th Amendment, and then Judge Locanto echoed those, and so did Judge Guzman in her order, discussed those issues. So, I think as pled, there are valid constitutional claims. What we're not allowed to do is dig behind into the merits and say, okay, is that a meritorious claim? Let's get into it. That's to come once we get beyond the motion to dismiss stage. The status of your clients does matter to figuring out the standing. So, what are we supposed to do about that? Well, we've alleged that they were harmed by the failure of the MSP to turn over the surreptitious video and audio recordings. But if their claims, I mean, it seems to me you're in a whipsaw situation, because if these claims have been resolved and they've been dismissed, then I think you have a standing problem. If there's a pending criminal case against them and you have some kind of discovery complaint, we can't hear that under Younger. So, either way, it seems like you're, and yet you just sort of say, well, our complaint doesn't tell you. So, good luck. I think the complaint does tell you. It mentions the at-trial at several places, and you know It mentions what? They were harmed through the failure of them to produce at-trial. So, paragraph 165, MSP's failure to produce these secret recordings to plaintiffs deprived them of exculpatory evidence at trial. Paragraph 167, MSP's unjustifiably and unlawfully violated plaintiffs' rights to be presented with evidence against them, confront their accusers, and enjoy a fair and impartial trial due to MSP's customs, patterns, practices, and or procedures. And so, the substance, like, there's plenty of time for each side to conduct discovery, get into the evidence, and decide, okay, do the plaintiffs have a valid 14th Amendment and 6th Amendment claim? This is not the venue for that at this point. It's premature. It's early, and the record doesn't support it. Thank you. Okay, thank you. The appellant rests on its argument here today, as well as the papers. Thank you.